UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CRIMINAL ACTION NO. 1:19-CR-00042-GNS-1

**UNITED STATES OF AMERICA**                                                                                                      **PLAINTIFF**

**VS.**

**DONAVAN BELL**                                                                                                                             **DEFENDANT**

**FINDINGS OF FACT, CONCLUSIONS OF LAW
AND RECOMMENDATION**

BACKGROUND

Before the Court is the Defendant's motion to suppress evidence (DN 23), which was later supplemented (DN 33). The United States responded in opposition (DN 34). The matter is ripe for adjudication.[1]

On September 11, 2020, the undersigned conducted an evidentiary hearing (DN 46). The Defendant appeared in person, represented by his retained counsel Ramon McGee (Id.). The United States was represented by Assistant United States Attorney Mark J. Yurchisin, II (Id.). A transcript of the hearing was subsequently filed (DN 48). Defendant filed a post-hearing memorandum (DN 50), and the United States filed its memorandum (DN 51).

---

1   The District Judge referred this motion to the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(b)(1)(A) and (B) and FED. R. CRIM. P. 59(b)(1), for any necessary hearings and for findings of fact, conclusions of law, and recommendation (DN 37).

## NATURE OF THE CASE

Defendant Donovan Bell was charged in a superseding indictment by a Grand Jury sitting in Bowling Green (DN 39). The indictment charges him with distribution of methamphetamine,[2] possession of methamphetamine with the intent to distribute,[3] and possession of a firearm in furtherance of a drug trafficking crime[4] (Id.).

## FACTS

On August 7, 2019, Agent Brad Harper of the South Central Kentucky Drug Task Force executed an affidavit in support of a search warrant (DN 48 PageID 145-47). He recounted in his affidavit that he received information from a named informant that on August 5, 2019, the informant and two other individuals traveled to a residence in Franklin, Kentucky (Id. at PageID 143-44; DN 26-1 PageID 53). There, one of the individuals, Hines, traded a baggie of methamphetamine for a handgun (DN 26-1 PageID 53). Hines then advised the informant that they were taking the handgun to "Donovan Bell at 197 Hobdy Road, Franklin, KY 42134" (Id.; DN 48 PageID 144). Agent Harper's affidavit further recounts that the informant advised him they traveled to that location where Hines gave the gun to Bell (DN 26-1 PageID 53). The informant reported that Bell had another gun in his hand, described as "a black square shaped 9mm gun" (Id.; DN 48 PageID 144). The informant also reported seeing a plastic bag of crystal methamphetamine weighing approximately one ounce on a table next to a set of digital scales (DN 26-1 PageID 53). Agent Harper further stated that during the month of July controlled methamphetamine buys were conducted at Bell's residence (Id.; DN 48 PageID 141-42). Agent Harper indicated that video of the transaction showed Bell possessing "a black square handgun"

---

2    21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii).
3    21 U.S.C. § 841(a)(1) and 841(b)(1)(B)(viii).
4    18 U.S.C. § 924(c)(1)(A).

(Id.) and that this corroborated the informant's statement. Agent Harper concluded that a criminal history check of Bell revealed that he was "a multi-time convicted felon" (DN 26-1 PageID 53).

Agent Harper requested issuance of a search warrant for "197 Hobdy Road, Franklin KY 42134" (Id.). He described the location as a "[o]ne-story red brick single family residence with black shutters and a black roof. A white front door with a small concrete pad and steps. The residence has a car port [sic] built on to the left side that also has a white door that leads inside. The driveway is gravel and leads to the carport area of the residence" (Id. at PageID 51). A photograph of the residence was attached to the affidavit (Id. at PageID 50, 55). A Kentucky state Trial Commissioner[5] issued the search warrant for "197 Hobdy Road, Franklin, KY 42134" and which recited the property description and referenced the photograph. (Id. at PageID 48-49). That same day, Agent Harper and other law enforcement agents executed a search of the residence (DN 48 PageID 145-47). Bell was detained during the search (Id. at 156-57; DN 33 PageID 67). The record does not reflect what evidence was seized as a result of the search.

## MOTION TO SUPPRESS

Bell advances several arguments for suppressing physical evidence discovered during the search (DN 23, 33). These arguments are:

1. The affidavit was defective because the reliability of the informant was not established;

2. The affidavit was defective because the corroborating information about controlled buys was stale;

3. The affidavit was defective because the address listed for the residence was in Franklin, Kentucky, whereas the actual location of the residence searched was Auburn, Kentucky;

4. The search was executed before the warrant was issued.

---

5  Authorized to issue search warrants pursuant to KY. R. CRIM. P. 13.10(1).

Bell makes an additional argument for suppression of any statements he made to law enforcement during the search (DN 33 PageID 67).  He contends he was detained in custody and questioned without the benefit of a Miranda warning (Id.).

## DISCUSSION

The Fourth Amendment provides that:

> [t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no [w]arrants shall issue, but upon probable cause, supported by [o]ath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. CONST. amend. IV.

"To establish probable cause adequate to justify issuance of a search warrant, the governmental entity or agent seeking the warrant must submit to the magistrate an affidavit that establishes 'a fair probability that contraband or evidence of a crime will be found in a particular place.'" United States v. Brooks, 594 F.3d 488, 492 (6th Cir. 2010) (quoting United States v. Berry, 565 F.3d 332, 338 (6th Cir. 2009)).  The probable-cause standard is practical and nontechnical. United States v. Frazier, 423 F.3d 526, 531 (6th Cir. 2005).  In other words, a reviewing court should consider the "totality of the circumstances" rather than "engage in line-by-line scrutiny of the warrant application's affidavit."  United States v. Williams, 544 F.3d 683, 686 (6th Cir. 2008). But the court must limit its "review of the sufficiency of the evidence supporting probable cause . . . to the information presented in the four-corners of the affidavit."  Frazier, 423 F.3d at 531. Evidence obtained in violation of a defendant's constitutional rights bars the use of that evidence against him at trial.  Mapp v. Ohio, 367 U.S. 643 (1961).

1. Informant Reliability

Bell asserts that the affidavit submitted in support of the warrant lacked "any indicia of reliability of the informant information contained therein" (DN 23 PageID 37), nor did the agent conduct any investigation into events *after* those alleged by the informant in an effort to corroborate his statement (Id. at PageID 39).

In response, the United States contends that the information provided by the informant was demonstrated to be reliable (DN 34 PageID 72-73). First, the information was not from an anonymous tipster, rather it was from a named individual, and therefore accorded greater weight (Id.). The information related to events two days in the past, and the informant provided specific information, such as the residence where the events took place, the exchange of drugs and a gun, the presence of a substantial amount of methamphetamine, and an apt description of Bell's possession of another gun (Id.). This was all corroborated, the United States argues, by the prior controlled methamphetamine buys where video revealed a gun matching the informant's description (Id.).

Agent Harper testified that he met with the informant, Willie Haynes, on August 7, the day he obtained the search warrant (DN 48 PageID 143-44). During that meeting, Haynes described his involvement in the drugs and firearm transactions with Bell on August 5 (Id.). Haynes identified the location in question as "197 Hobdy Road," identified Bell by his nickname "C-Murder", and described the handgun he saw at Bell's residence (Id. at PageID 144). Agent Harper testified that the information was consistent with a video-recorded controlled buy of narcotics at Bell's residence on July 23, in which a handgun similar to that Haynes described had been observed (Id. at PageID 141-42). Although Haynes was not working for law enforcement as an informant at the time, Agent Harper testified that he "had provided information in the past that

made him reliable in my eyes . . ." (Id. at PageID 158). He further testified that Haynes had come forward with the information voluntarily because "he got threatened by Mr. Bell on the 5th and was scared for his life" (Id. at PageID 160). Haynes did not have any physical evidence to corroborate his statement (Id. at PageID 161). Agent Harper also agreed that the description of a "black square handgun" could apply to any number of pistols (Id. at PageID 161-62).

"Probable cause may come from a confidential informant's tip, when sufficiently detailed and corroborated by the independent investigation of law enforcement officers." United States v. Lumpkin, 159 F.3d 983, 986 (6th Cir. 1998). In weighing the reliability of a particular source of confidential information, the Sixth Circuit describes the spectrum of weight to be accorded the information as follows:

> Initially, when part of the reasonable-suspicion equation includes a tip form an informant, the weight to which that tip is entitled falls along a broad spectrum. On the one hand, tips from anonymous informants are generally entitled to little weight because they provide slim, if any, opportunity to assess the reliability and credibility of the individual providing the information. Thus, "[u]nlike known or identified informants, anonymous tipsters, without more, cannot be deemed reliable regarding their allegations." As the district court correctly recognized, a tip that fails to make any allegation of illegality is likewise entitled to little weight.
>
> On the other hand, tips from known or reliable informants generally are entitled to substantially more weight. Tips that provide specific details or predictions of future action fall higher on the reliability scale because they suggest the existence of knowledge to which the public might not have access. Between these two extremes is a sliding scale; "[t]hus, if a tip has a relatively low degree of reliability, more information would be required to establish the requisite quantum of suspicion that would be required if the tip were more reliable." Accordingly, the weight of an informant's tip in the overall reasonable-suspicion analysis must be determined case by case.

United States v. Williams, 483 F. App'x 21, 25 (6th Cir. 2012) (internal citations omitted); *see also* United States v. Chandler, 437 F. App'x 420, 426 (6th Cir. 2011) (Identified source has high degree of reliability due to risk of adverse consequences for providing faulty information).

Here, the information from the informant was entitled to credence. The informant was known to law enforcement and described his own participation in illegal activity (DN 26-1 PageID 53; DN 48 PageID 143-44). He named the individuals involved in the drug and gun transactions (Id.). He specifically identified Bell's residence and indicated he had been there and observed the events in person (Id.). He described in detail the type, quantify and location of the drugs he observed, as well as describing the gun in Bell's possession (Id.). The events had taken place two days before (Id.). Within the month preceding, law enforcement had conducted recorded controlled buys of methamphetamine from Bell, the same type of drug reported by the informant (Id.; DN 48 at PageID 141-44). Moreover, in a drug buy video, law enforcement observed Bell possessing a handgun matching the description provided by the informant (DN 26-1 PageID 53). Finally, a criminal background check revealed Bell had multiple prior felony convictions (Id.). Based upon the totality of the circumstances, the information provided by the informant was sufficiently reliable to provide probable cause to believe that drugs and firearms were located at Bell's residence.

2. Staleness of the information

Bell contends that the information about drug transactions presented in support of the search warrant affidavit was stale, having occurred days and weeks prior (DN 23, 33). In response, the United States notes that the information from the informant was only two days old, and the controlled buys were, at most, only five weeks and two days old (DN 34 PageID 75-76). Alternatively, even if the controlled buys provided stale information, that information was refreshed by the more contemporaneous information from the informant (Id. at PageID 76) (citing United States v. Spikes, 158 F.3d 913, 924 (6th Cir. 1998).

"Staleness is measured by the circumstances of the case, not by the passage of time alone." Sgro v. United States, 287 U.S. 206, 210-11 (1932). The Court looks to four factors to measure staleness:

> (1) the character of the crime (chance encounter in the night or regenerating conspiracy?), (2) the criminal (nomadic or entrenched?), (3) the thing to be seized (perishable and easily transferrable or of enduring utility to its holder?), and (4) the place to be searched (mere criminal forum of convenience or secure operational base?).

United States v. Frechette, 583 F.3d 374, 378 (6th Cir. 2009) (quoting United States v. Abboud, 438 F.3d 554, 572–73 (6th Cir. 2006)). Applying these factors to the case at hand, the information was not stale. The affidavit states that in the month of July "controlled buys have been conducted at Bell's residence from Bell" (DN 26-1 PageID 53), clearly indicating that drug transactions had been observed on more than one occasion. The more recent information from the informant that Bell was engaged in drug trafficking established that the crime was "a regenerating conspiracy." Moreover, evidence of ongoing criminal activity will generally defeat a claim of staleness. United States v. Greene, 250 F.3d 471, 481 (6th Cir. 2001).

The second factor regarding the suspect, and whether "nomadic or entrenched" is clearly satisfied, as all alleged drug transactions took place at Bell's residence. The third factor is more problematic. "In the context of drug crimes, information goes stale very quickly 'because drugs are usually sold and consumed in a prompt fashion.'" United States v. Brooks, 594 F.3d 488, 493 (6th Cir. 2010) (quoting Frechette, 583 F.3d at 378). Here, however, the most recent information was two days old, and, standing alone, was not stale. *See* United States v. Yates, 501 F. App'x 505, 511 (6th Cir. 2012) (Evidence of single drug transaction occurring at a residence was not stale when the transaction occurred within 10 days of affidavit execution.); United States v. Pinson, 321 F.3d 558, 565 (6th Cir. 2003) (Evidence of single controlled purchase was not stale when the

warrant was issued three days later.). The information about the earlier drug buys, which standing alone might not be current, was revalidated by the more recent information from the informant. *See* United States v. Jones, No. 5:18-094-DCR, 2018 U.S. Dist. LEXIS 165931 at *10 (E.D. Ky. Sept. 27, 2018) (Controlled buy taking place one month before application for warrant provided information that was "updated and substantiated" when more information was obtained within 48 hours of the application). Moreover, the affidavit contains information about the presence of a handgun in the possession of a convicted felon (DN 26-1 PageID 53). "Those who own and possess firearms generally maintain them for long periods of time." United States v. Lancaster, 145 F. App'x 508, 513 (6th Cir. 2005). Finally, the fourth factor is clearly satisfied as, again, all activities took place at Bell's residence which would be considered a "secure operational base." The undersigned concludes the information supporting probable cause was not stale.

    3. <u>Error in search location address</u>

The affidavit in support of the search warrant consistently identified the location to be searched as "197 Hobdy Road, Franklin, KY 42134" (DN 26-1 PageID 48, 51, 53). The search warrant was issued for that address (<u>Id.</u> at PageID 48-49). Bell contends, and the United States does not dispute, that Bell's <u>mailing</u> address is 197 Hobdy Road, <u>Auburn</u>, Kentucky (DN 23, 33; DN 34 PageID 74). The error, Bell claims, invalidated the search warrant because law enforcement executed the search at an Auburn address when the warrant specified Franklin.

The United States counters that, notwithstanding any technical error in the address, the warrant was nonetheless valid because the street address was correct and, regardless of the city designation, the address is still in Simpson County (DN 34 PageID 73-75). The United States notes that the physical description of the dwelling and the photograph attached to the affidavit and warrant both accurately represent Bell's residence (<u>Id.</u>).

9

The Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched and the persons or things to be seized." U.S. CONST. amend IV. In determining whether a warrant's property description is constitutionally valid, the undersigned must ask "whether the place to be searched is described with sufficient particularity to enable the executing officer to locate and identify the premises with reasonable effort, and whether there is any reasonable probability that another premise might be mistakenly searched." United States v. Pelayo-Landero, 285 F.3d 491, 496 (6th Cir. 2002) (citing United States v. Durk, 149 F.3d 464, 465 (6th Cir. 1998)). An error in description, such as an incorrect address, does not automatically invalidate a search warrant. Pelayo-Landero, 285 F.3d at 496 (citations omitted). A search warrant that inaccurately identifies the situs of the search will be upheld against a particularity challenge if the warrant "faithfully described the structure as it was known or should have been known to the officers after reasonable inquiry." United States v. Noel, 938 F.2d 685, 687 (6th Cir. 1991) (citing Maryland v. Garrison, 480 U.S. 79 (1987)).

Here the parties do not contend that there are two dwellings with a 197 Hobdy Road address, one in Franklin, Kentucky (Simpson County) and the other in Auburn, Kentucky (Logan County) (DN 48 PageID 172-73). The undersigned notes that Simpson and Logan are adjoining counties. It appears that 197 Hobdy Road is a rural address that can be considered an adjunct of either Franklin or Auburn. Agent Harper testified that Bell's driver's license lists his address as 197 Hobdy Road, Franklin, Kentucky (Id. at PageID 142). The United States has submitted a ZIP Code lookup from the United States Postal Service indicating that, while Bell's mailing address is an Auburn address, it is physically located in Simpson County (of which Franklin is the county seat) (DN 36-1 PageID 86). Bell has submitted a 2019 Simpson County property tax statement

10

demonstrating that property taxes for 197 Hobdy Road are paid to Simpson County (DN 50-1 PageID 188).

Consequently, 197 Hobdy Road has a <u>mailing</u> address of Auburn, Kentucky (which is located in Logan County) but is <u>physically located</u> in Simpson County, Kentucky.

> To decide whether a warrant drafting mistake violates the Fourth Amendment, we ask whether "the inaccuracies in the warrant [would] lead to a mistaken search of other premises." <u>United States v. Durk</u>, 149 F.3d 464, 465-66 (6th Cir. 1998). That is because "[t]he evil that the framers of the Constitution were trying to eradicate with the particularity requirement was the so-called general warrant that allowed officers to search at random." <u>Id.</u> If a warrant describes a residence specifically enough to (1) "enable the executing officer to locate and identify the premises with reasonable effort" and (2) prevent the government from mistakenly searching a different residence, then this Court views the warrant's inaccuracies as benign clerical errors. *See* <u>Id.</u> at 465-66.

<u>United States v. Abdalla</u>, 972 F.3d 838, 845 (6th Cir. 2020). Here, had the search warrant listed the Auburn mailing address, law enforcement would nonetheless have searched the same dwelling, as "197 Hobdy Road, Franklin, Ky." and "197 Hobdy Road, Auburn, Ky." describe the same residence. Moreover, Agent Harper previously surveilled the dwelling,[6] headed the search, and was the affiant on the search warrant (DN 48 PageID 141-42, 144-45). "[A]n inaccurate warrant would be less likely to produce a mistaken search because 'the executing officer . . . was also the affiant' and was familiar with the property to be searched." <u>Abdalla</u>, 972 F.3d at 847 (quoting <u>Durk</u>, 149 F.3d at 466). Finally, the undersigned observes that the warrant contained a physical

---

6   Questioning ("Q") by Mr. Mark Yurchisin, II, and Answers ("A") provided by Agent Brad Harper:

   Q: Where did the controlled buy take place?
   A: At [Bell's] residence on Hobdy Road.
   Q: Had you been to see that residence?
   A: Yes, sir; I had.
   Q: Had you driven by it during the controlled buy?
   A: Yes, sir.

   (DN 48 PageID 141-42).

11

description of the dwelling and was depicted in an attached photograph (DN 26-1 PageID 48). Bell does not dispute that the photograph is of his residence (DN 48 PageID 173). "Even though a warrant containing the wrong address can sometimes risk a mistaken search, such an 'error does not invalidate a search warrant if the warrant includes other specific descriptors that remove the probability that the wrong location could be searched[.]'" Abdalla, 972 F.3d at 846 (quoting United States v. Crumpton, 824 F.3d 593, 612 (6th Cir. 2016)).

    4.   Time of execution of the search

Bell asserts that the search was initiated before execution of the search warrant (DN 23 PageID 37). The affidavit in support of the warrant was notarized at 6:35 p.m. (DN 26-1 PageID 54). In military time, this was "18:35 hours." Bell contends that the bodycam recording of the search indicates that the search began at 17:20 hours, which would precede execution of the search warrant affidavit by an hour (DN 33 PageID 64-66).

The United States has submitted as evidence a CAD report (DN 36-2 PageID 88-89) indicating that officers were dispatched to execute the search warrant at 7:22 p.m. (19:22 hours), approximately an hour after the search warrant affidavit was executed, and Agent Harper arrived on scene at 7:24 p.m. (19:24 hours) (Id.). As to any discrepancy on the bodycam time stamp, Agent Harper testified that the time stamp was not accurate (DN 48 PageID 149). "Axon, the people that make our body cameras, set it on a certain time, and we can't - - we can't mess with that time, so it's several - - several hours off" (Id.). To corroborate this testimony, the United States has tendered an image from the bodycam recording in which the clock on Agent Harper's vehicle dash can be seen displaying 19:24 (DN 36-3 PageID 90).

Based upon the totality of the evidence in the case, the undersigned concludes that the law enforcement officers did not initiate the search prior to obtaining the warrant.

5. <u>Custodial interrogation and Miranda</u>

"No person shall be compelled in any criminal case to be a witness against himself." U.S. CONST. amend. V. In <u>Miranda v. Arizona</u>, the Supreme Court, in prescribing safeguards for the effectuation of the Fifth Amendment, held that "the prosecution may not use statements . . . stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." 384 U.S. 436, 444 (1966). The safeguards "prescribed by <u>Miranda</u> are to ensure that the police do not coerce or trick captive suspects into confessing." <u>Berkemer v. McCarty</u>, 468 U.S. 420, 433 (1984). If a suspect is interrogated while in custody, and he does not voluntarily, knowingly, and intelligently waive his <u>Miranda</u> rights, any statements he makes to the police must be suppressed. <u>Id.</u> at 429.

Bell's motion states:

> [t]hat the Defendant was detained by law enforcement at the time of entry for execution of the search. The Defendant was placed in handcuffs and held in the presence of four to five (4-5) police officials during the early part of the execution of the search. During the period of this detention, the Defendant was asked about one or more items of contraband identified by police officials during the search. Despite being detained and questioned, the Defendant was not informed of his constitutional rights at any point prior to or during the detention and questioning.

(DN 33 PageID 67). The United States responds that, upon the officers' entry into the residence, Bell was detained and read the search warrant (DN 34 PageID 77). Once that was complete, Agent Harper mirandized Bell (<u>Id.</u>). The United States indicates that it "is unclear as to what the defendant is objected to, since he was mirandized at the onset of the search" (<u>Id.</u>).

The bodycam recording provided by the United States confirms that, after agents took Bell into custody and handcuffed him, Agent Harper read him the search warrant and then a <u>Miranda</u> warning. Although the United States characterizes any pre-<u>Miranda</u> statements as voluntary and

13

not in response to questions, during the evidentiary hearing Agent Harper agreed that Bell was asked some questions before being read his rights (DN 48 PageID 156). The Defendant has not identified any particular incriminating statements he made prior to being advised of his rights which he contends should be excluded (*see generally* DN 23, 33). Any incriminating statements he made before receiving his Miranda warning would be subject to exclusion. No argument has been advanced that the Miranda warning was not effective so as to require exclusion of any post-Miranda statements.

## RECOMMENDATION

**WHEREFORE** the undersigned **RECOMMENDS** that Defendant's motion to suppress (DN 23) be **GRANTED IN PART** and **DENIED IN PART**. Evidence obtained during the search of Defendant's residence should not be subject to suppression. Any statements Defendant made while in custody, but before being advised of his Miranda rights, should be suppressed, but any statements made thereafter should not.

*[signature]*

**H. Brent Brennenstuhl**
**United States Magistrate Judge**

October 27, 2020

## NOTICE

Therefore, under the provisions of 28 U.S.C. § 636(b)(1)(B) and FED. R. CRIM. P. 59(b)(1), the Magistrate Judge files these findings and recommendations with the Court and a copy shall forthwith be electronically transmitted or mailed to all parties. Within fourteen (14) days after being served with a copy, any party may serve and file written objections to such findings and recommendations as provided by the Court. FED. R. CRIM. P. 59(b)(2). "Failure to object in accordance with this rule waives a party's right to review." FED. R. CRIM. P. 59(b)(2).

October 27, 2020

H. Brent Brennenstuhl
United States Magistrate Judge

Copies:     Counsel